## DUFRESNE v. NORTHERN LIGHT MINING CO. et al.

(Second Division. Nome. December 2, 1905.)

No. 1,209.

MINES AND MINERALS—PRIORITY OF CONFLICTING LOCATIONS.

Where a senior valid placer mining location is overlapped by a junior location, and the overlap is subsequently abandoned by the senior locator, the portion so abandoned does not thereby inure to or become a part of the junior location, but becomes a part of the public domain, subject to location by another locator. Lavagnino v. Uhlig, 198 U. S. 443, 25 Sup. Ct. 716, 49 L. Ed. 1119, and Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, considered, and Belk v. Meagher followed, in this case. See, also, Montagne v. Labay, 2 Alaska, 575, by the same judge.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mines and Minerals, § 65.]

This is an action of ejectment. A trial of the case resulted in a verdict for the defendants, and now the plaintiff moves for a new trial and that the verdict be set aside. The action involves the title to the greater part of a fractional placer mining claim on Ophir creek in the Council City recording district, Alaska, known as the "Ori Phina Bench," alleged by the plaintiff to have been located January 2, 1904, by W. A. Black, predecessor in interest of Andrew Dufresne, the plaintiff.

The defendants laid claim to the greater part of said Ori Phina Bench claim by virtue of:

(1) A location of over 20 acres of ground, called "No. 1 Below Discovery on Ophir Creek," by Severus Sidelius, alleged to have been made on May 10, 1898, and by virtue of an

amended location made August 10, 1901, of a part of the ground embraced in said original location.

(2) A location alleged to have been made on January 11, 1899, by E. Wismer.

(3) A location alleged to have been made August 18, 1901, by E. Curling of the claim known as the "Richmond Bench Claim."

C. D. Murane and Wm. H. Packwood, for plaintiff.

Albert Fink, Gordon Hall, and Johnson & Daly, for defendants.

MOORE, District Judge.    It was in evidence that part of the Sidelius location of No. 1 below discovery was abandoned in August, 1901.    The plaintiff contended at the trial that upon the abandonment of this part of the claim the part so abandoned became open to relocation, in accordance with the provisions of section 2324 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1426], and that it remained vacant and unoccupied ground subject to relocation until January 2, 1904, when by virtue of the location of that date by W. A. Black it became his property, and by a conveyance later from Black his interest therein passed to the plaintiff, Dufresne.

The defendants maintained, on the contrary, that the abandoned part of the Sidelius claim inured to the extent of the overlap of the Wismer location upon the abandoned part of the No. 1 below claim, to the benefit of the Wismer location, and became the property of the owners thereof, their assigns and successors in interest.

The defendants cited the opinion of the Supreme Court of the United States, decided May 29, 1905, in the case of Lavagnino v. Uhlig, 198 U. S. 443, 25 Sup. Ct. 716, 49 L. Ed. 1119, in support of this legal proposition.    The doctrine of the decision was new, and seemed to be so at variance with the doctrine of Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, as to over-

2 A.R.—38

rule the latter case without overruling it in express terms.

The Lavagnino Case was begun in the District Court of Salt Lake County, Utah, in a proceeding started to adverse and defeat an application for a patent begun by Uhlig and maintained by Uhlig and McKernan. The decision was accepted as authority governing this case because of its facts being so nearly similar to the facts of this case, and because it was difficult to give any reason why the rules of law announced in the decision should not apply in an ordinary ejectment case, as in adversing proceeding. At the time the decision, being the latest deliverance of the Supreme Court on a state of facts substantially similar to the case on trial, seemed to compel this court to follow it.

Among the reasons for a new trial filed by the plaintiff was this: Error in law occurring at the trial, and excepted to by the plaintiff at the time, and, particularly, errors of law contained in the instructions given by the court to the jury in said cause, which were excepted to by the plaintiff in the presence of the jury.

The particular instruction to which error is imputed is instruction No. 6. In that instruction the court, following the decision in Lavagnino v. Uhlig, said, in substance, that the jury found that the Sidelius location was lawfully made, and afterwards the Wismer location was made according to law, but that part of it was in conflict with a part of the Sidelius location, and afterwards, in August, 1901, the Sidelius location was abandoned, that the abandoned part of the Sidelius location in conflict with and overlapped by the Wismer location became upon its abandonment part and parcel of the Wismer location, inured to the benefit of said Wismer location, and became the property of the owners thereof, their assigns and successors in interest; in other words, the instruction given taught that, upon the abandonment of a senior location, the abandonment did not operate to open to relocation

the part of the abandoned claim which was overlapped by another junior subsisting location at the time of the abandonment, but operated, rather, to vest in the owners of the junior location the part of the senior claim in conflict with the junior claim.

It is needless to say that the decision in the case of Belk v. Meagher has been accepted by the courts and text-book writers as authority, within the limits of its facts, since its announcement in 1881. It is supported by a clear and able opinion by the then Chief Justice Waite, and is undoubtedly in the class of leading cases on the mining law of the United States. But for the appearance of the later and apparently conflicting decision, it would have been adopted by this court as the law governing the part of the two claims in conflict in the Dufresne Case now under consideration.

To what extent is the later case of Lavagnino v. Uhlig an authority? And was its doctrine properly applied as the law of the present case? These questions properly come up for discussion in reaching a determination of the motion now before the court.

The controversy, of which the novel doctrine of the Supreme Court of the United States in the Lavagnino Case is the outcome, arose in proceedings in Utah begun by Lavagnino to defeat the application of Uhlig and McKernan for a patent. Uhlig and McKernan aimed to procure a patent for two claims, called the "Uhlig No. 1" and "Uhlig No. 2." Lavagnino filed his adverse claim to a portion of each of said claims, basing his right to the possession of the disputed parts, primarily, upon a relocation of a claim which had nine years before been located as the "Levi P. Claim." The annual labor upon the Levi P. had not been done for the year 1897, and the claim was relocated January 1, 1898, by J. Fewson Smith, Jr., upon the theory that the nonperformance of the annual labor had worked a forfeiture of the Levi P. Claim. He gave the claim

located by him the name "Yes You Do." The Uhlig claim had been located on January 1, 1889, after the Levi P. location had been made, but on the same day. The Uhlig claims are therefore properly designated as junior locations, and the Levi P. as the senior location, in referring to the two different locations.

In considering the decision of the Supreme Court of the United States in Lavagnino v. Uhlig et al., it must be kept in mind that the court was called upon to determine the rights of an applicant for a patent to mining land as against an adverse claimant to the same, or part of the same, land. The true inquiry for the court was, what were the relative rights of the parties to the adverse proceedings as involved therein at the date of the filing of the adverse claim in the Land Department? The decision is the result of the court's construction of section 2326 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1430], apart from the construction of any other section of the mining laws. That section defines the procedure by which an adverse claimant of mining land may enter "a court of competent jurisdiction," and set in motion its machinery "to determine the question of the right of possession," raised by the conflicting allegations of the applicants for a patent and of the adverse claimant. It further declares the legal effect upon an adverse claimant of his failure to thus assert and maintain his rights to the property in conflict. It creates no new rights; it simply announces how one asserting rights adverse to another may lose them by his failure or default to comply with the requirements of the section. The action of Lavagnino v. Uhlig et al. was brought in conformity to that section, and its object and aim was to settle the rights in conflict between the contesting parties thereto only. True, the judgment rendered by the court would, by the implied terms of the statute, settle the rights of the applicant as against the whole world, if no other adverse proceedings were begun

by other claimants within the statutory time limited therefor. It must be admitted, also, that one having rights in mining property may forfeit them to an applicant for a patent by his failure to start and prosecute his adverse proceedings.    This results, necessarily, under the express words of the statute. A senior locator, by this manner of default, while his rights last may virtually surrender them to a junior locator.    When, however, by his failure to do the acts requisite under the laws to maintain his interest in a location he suffers his rights in the location to lapse, then, under the operation of section 2324 of the Revised Statutes [U. S. Comp. St. 1901, p. 1426], unaffected by the construction given to other parts of the mining laws, the claim reverts back to the government, and becomes open to relocation by another.    When relocated in legal form by another before the first locator has resumed the performance of the annual labor or assessment work thereon in good faith, the relocator acquires, by operation of the said section 2324, ownership in the claim good against the whole world save the government.    This has been the generally accepted law concerning the right to relocate public mineral lands, and as to the time when the right of relocation accrues.    I believe it to be still the law, notwithstanding the decision in Lavagnino v. Uhlig et al., to be applied in an ordinary action in the nature of ejectment to recover possession of mineral land.

"A location can only be made when the law allows it to be done. Any attempt to go beyond that will be of no avail.    Hence a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such thing to be done. * * *   A location to be effectual must be good at the time it is made. * * *   Congress has said in unmistakable language that what has once been located under the law shall not be relocated until the first location has expired."    Belk v. Meagher, 104 U. S. 284, 285, 26 L. Ed. 735.

This law applies as well in the Lavagnino Case to the junior location as to the Smith or Lavagnino location.

As before stated, the decision in the Lavagnino Case is based on the construction of section 2326 singly, and therefore it should not be read as a new interpretation of the mining laws of the United States as an entirety. That section deals with adverse claimants of mining lands and their rights, and professes to point out the method of asserting these rights in their relation to the conflicting claims or rights of applicants for patents, and defines the consequences accruing to the adverse claimants from their failure to assert and maintain those rights. The section 2324 in unequivocal terms has declared that the rights of the locator and owner of an abandoned or forfeited claim reverts back to the United States at the moment of abandonment or forfeiture, and the claims become public lands subject to be relocated. Yet we find the Supreme Court applying the section 2326 to another than an adverse claimant's, pursuing his adverse remedy, and by a process of reasoning reaching the conclusion that an abandoned or forfeited claim reverts not to the United States, and becomes not public land at the time the abandonment or forfeiture is completed.

In Lavagnino v. Uhlig, reported in 198 U. S. 456, 25 Sup. Ct. 720 (49 L. Ed. 1119), the court argues that, if the owners of the Uhlig claim had applied for a patent, and the owners of the Levi P. had not adversed the application, upon the establishment of a prima facie right in the owners of the Uhlig claim an indisputable presumption would have arisen that no conflict claims existed to the premises described in the Uhlig location notice; and further argues that the same result would have arisen had the owner of the Levi P. adversed the application for patent based upon the Uhlig locations, and then failed to prosecute, and thus waived such adverse claim. In both of these supposed instances the necessary consequence would have been a determination in favor of the applicant, so far as the rights of third persons were concerned, that the land was not unoccupied public land of the United States.

But the "supposed instances" do not fairly represent the real situation confronting the applicant.    The facts in the case are that an adverse claimant, basing rights upon a compliance with section 2324, had relocated the claim, and did assert his rights by pushing adverse proceedings to final judgment.    The reasoning is good as applied to a case wherein there is no one to contest the applicant's claim; it is unsound and illegitimate if an attempt is made to fit it to facts and circumstances presented by the adverse proceedings.

The last step in the court's reasoning is that, since in these instances the land claimed in common would have to be declared under the statute not unoccupied public lands, a like result would arise (as the greater includes the lesser) from the forfeiture of the claim of the senior locator, because of the impossibility of the senior locator to successfully adverse after the forfeiture is complete.

In any view proper to be taken of that decision and case, however, I am of the opinion, for the reasons outlined herein, that the case is authority to be followed only in cases disclosing facts either the same as, or similar to, the facts therein.    Its authority is limited in its range, and weakened by the fact that the points decided by the court on its way to the propositions at the last decided were not made the subject of argument at the hearing of the case; by the fact that no effort was made to show the want of harmony between the doctrine announced and the doctrine of Belk v. Meagher; because it stands upon a construction of one section of a general statute, rather than of the whole statute; and because the appellate court had other and more conclusive grounds upon which to have placed its decision of the case, and did not resort to them.

In following at the trial the apparent leading of the decision in the Lavagnino Case, and in instruction No. 6 adopting the main doctrine of that case as the law in part controlling the verdict of the jury, I am now convinced there was error, and a new trial is now ordered.